May I please support Andrew Tweetmeyer on behalf of Petitioner-Appellant Benedict Consentino? I would like to reserve two minutes for rebuttal. Your Honor, IGRA requires that for Indian gaming to be lawful, it must be conducted in conformance with the Tribal-State Compact. The Pechanga Band's Compact requires the Pechanga Band to waive sovereign immunity and arbitrate all tort claims arising out of, relating to, or connected with its gaming operations. Does it? Yes. Well, as I read the Compact, it says, We'll waive claims covered by our comprehensive general liability policy. The Compact, 10.2d, says, The Tribe shall waive its right to assert sovereign immunity up to the limits of the policy in accordance with the Tribal Ordinance referenced in Subdivision D-2. So isn't the proposed waiver only one of claims that would be covered by the policy? Not the way it's phrased in the Compact. Well, it would be a strange way to say we'd waive all claims. It says we're waiving claims, and it occurs right after, right after something that says, We'll get a general comprehensive liability policy. And then we'll waive claims up to the limits of that policy. And doesn't that really say they're only waiving claims? They only intend to waive claims. Let's put aside the issue of whether they actually waive them. But doesn't that only indicate that they shall waive claims that would be covered by the policy? And the policy covers all tort claims arising out of, related to, or connected with it. Do you think the policy covers your claim? Absolutely. Your policy is a personal injury that's covered by the Compact. Have you looked at it? My client's claims? Yes. Yes, absolutely. So you think they would be covered by the general policy? Yes. There's a lot of California law that says that claims of this type are not covered by a general comprehensive liability policy. They only cover accidents. Whatever happened to your client wasn't an accident. An intentional tort. An intentional tort is not an accident, and the comprehensive policy only covers accidents. A claim for bodily injury, property damage, or personal injury arising out of, connected with, or related to the operation of the gaming facility. You're reading the policy? I'm sorry? You're reading the policy? I don't have the policy. No, there is no policy. I'm reading the Compact. No, there is a policy. There's a comprehensive liability policy, and the comprehensive liability policy only covers accidents. So my question to you is why isn't that perfect compliance with the Compact? Excuse me, Your Honor. I have never seen a policy, as far as I know. We can take judicial notice. It refers to the standard comprehensive liability policy, which is on file with the California Department of Insurance, and that comprehensive policy only covers accidents. I don't think your client had an accident, whatever else happened. Now, there's a separate issue here, which we can get to later, but I just, I'm not clear that the premise of your argument that they were required to waive immunity for the kind of claim that your client's bringing is correct. That's why I'm asking. I understand. Your Honor, the way I read the Compact, and would suggest the Court read the Compact, is that it is broadly waiving all tort claims, claims for bodily injury, property damage, or personal injury. As far as I understand it, the tribe is self-insured. They're not, they haven't adopted a policy. We don't have the language of the policy in front of us. The tribe's tort liability ordinance itself uses the same language, and I would argue that claims for any recognized tort in California fall within that broad language. But you read tort to include intentional torts. Exactly. And there's a negligence claim. Can I ask you something about the policy? Did you seek discovery about the policy from the tribe? Has the tribe given you a policy or shown you the policy, if there's a policy? No. There has been no discovery in this case because it was dismissed at the door. But you were talking a moment ago, and I wanted you to get to this, about the actual waiver by the tribe. You agree the actual waiver. Can I just finish? I'm sorry. The policy, this is the first I'm hearing about the policy. Okay. Sorry. I realize it's referred to in the compact, but we don't have it in evidence, do we? No, Your Honor. I will ask the tribe's lawyer about the policy or whether they're self-insured. If so, what is covered? All right. Go ahead. My question was with respect to the actual ordinance adopted. You agree it doesn't cover your claim? I agree that it excludes my client's claims, yes. And that's the problem. Okay. Then let me get to that question. If the tribe broke its promise, if you will, to adopt an ordinance that would cover your client's claims, what can we do? Aren't they still immune? No. I would suggest that the court follow the same path that the court in Campbell Band of Indians v. Superior Court, California Court of Appeal followed, which is those provisions of a tort liability ordinance that conflict with the tribe's obligations under the compact are unenforceable. They violate federal law and they're void from the outset. But it's different. It seems to me there's a different result with an ordinance being unenforceable than treating an ordinance as a waiver of sovereign immunity. Don't you need a positive waiver of sovereign immunity by a tribe in order to sue it? Absolutely. And so the ordinance here is not a positive waiver. Even if we find the ordinance invalid, it doesn't become a positive waiver, does it? Well, Your Honor, the positive waiver is in the compact. The tribe has compacted with the State to waive sovereign immunity. And if we go back to the compact, all the tribe promised to do was enact an ordinance waiving sovereign immunity, right? There are very specific ordinance that waive sovereign immunity. So what if it broke its promise? That's my question. Is its breach of its promise itself a waiver of sovereign immunity? Or are they just contract breakers? They're absolutely compact breakers. Our position is that to the extent they're breaching the compact, they're violating federal law, and that you cannot enforce IGRA, which says that the compact controls if the tribe is then allowed to turn around and enforce any tort liability ordinance that it pleases. The tort liability ordinance laid out in section 10.2D2C of the ‑‑ I'm sorry, 10.2D2A, sorry, D2A, says that the tribal tort liability ordinance shall contain at least the following, that the tribe waives its right to assert sovereign immunity with respect to arbitration and court review of such claims. All right? Such claims are the claims that we've referred to here in section ‑‑ Romanet 1. What do you do with the part that says employment-related claims are not being waived? Where does it say that? What I'm looking here is at the TLA section 6, which is the employment-related claims of any kind of employees or former employees of the gaming operation or instance of mortality may only be brought under the grievance procedure of the employing entity and shall not be in any case cognizable under this act. That conflicts with all claims. Well, but it's a very specific provision that deals with employment claims. Why should we read the other provision to cover employment claims, then? Because employment claims are tort claims. An employment claim is a claim he's got an ‑‑ well, first off, this is not an employment claim. He was not employed by the Pechanga Gaming Commission. The injuries they inflicted occurred after he left his work, after his last day of work at the Pechanga Gaming Commission. He doesn't have an employment claim. All right? So, first, that section doesn't apply. And even if it did, a section that says no claim shall be cognizable under this act violates the compact's requirement that they waive sovereign immunity and arbitrate all claims. Right. But isn't that something the state should enforce as opposed to your client? No, because under compact section 10.2D2C, the federal courts enforce the obligation to arbitrate. The tribe and the state decided that it was for the federal courts to determine whether or not Mr. Cosentino's claims are arbitrable. If there is a waiver of sovereign immunity, correct? Well, that's part of the court's determination. That's right. And that's the essential issue in this case. I take it your position is that the compact itself is a waiver of sovereign immunity? Yes. Not the ordinance, because you agree the ordinance doesn't cover you. Well, the ordinance is a waiver of sovereign immunity. I know, but it doesn't help you. It unlawfully excludes. It unlawfully limits the waiver. I'm sorry. Are you arguing that we have the authority, in effect, to amend the ordinance to add your claim to it? I'm arguing that you have the authority to refuse to enforce portions of a tribal ordinance that conflict with Federal law. Okay. And I want to be clear on this, because it's important to me in this case. If we refuse to enforce the ordinance, does that mean that the tribe has waived its sovereign immunity with respect to your claim? See, that's where I have some difficulty. Don't you have to argue that the compact itself waives the immunity? It does. Well, I know you have to argue that. Isn't that your essential argument? That's what I'm asking. I'm reluctant to say it's my essential argument. But, yes, I absolutely am arguing the compact waives. But where I'm confused is the tort liability ordinance. Our argument is that the tort liability ordinance, to the extent it conflicts with the controlling law, which is the compact, it is unenforceable. Okay. But if it's, again, let me just try this again, because you and I are missing each other on this. The ordinance may be unenforceable. But does that make, does that mean the ordinance is a waiver of sovereign immunity? You have to go back to the compact to find your waiver, don't you? I think I understand what you're saying, that the ordinance is a waiver. Those portions of the ordinance, which then go in and surgically cut out Mr. Cosentino's claims and say, not these, are violations of the tribe's compact. Okay. No, thank you. No, I understand the argument. All right. Counsel. Good morning, Your Honors. May it please the court. My name is Frank Lawrence, and I represent the Pechanga Band of Los Angeles Mission Indians and the Pechanga Gaming Commission, the Pechanga Gaming Commission. Your Honor, you're exactly right. I'm not sure what I said, so don't agree with me. Yeah, I wouldn't say, I wouldn't start off with that. Because I'm not sure what I think, so don't agree with me. The plaintiff has filed a petition. Take your argument. You got the gist of his position, so address that. The plaintiff has filed a petition to compel arbitration under a tribal law, right, Tribal Tort Claims Act. The face of that act that he's bringing his action under bars his claim in multiple ways. It's to be strictly construed. Well, he doesn't dispute that the face of the ordinance bars his claim. In multiple ways. It is a flat bar against his claim. But he says. So he says. He says the compact was a waiver, and therefore, and you should have waived more. And put aside my questions to him about liability policies. Why isn't he right about that? He's dead wrong about that, Your Honor. The compact does include a waiver of sovereign immunity in Section 9. It's a limited waiver to allow the state of California to bring a dispute resolution process, voluntary arbitration, and then federal court to enforce any term of the compact that it believes the tribe is in the breach of. And you're exactly right that if the tribe's tort claims ordinance didn't meet its obligations under the compact, the only entity that has a remedy I'm the one who said that. So you should be saying you agree with me. Be careful about agreeing with her, because you don't know what she thinks. So under the compact, the only entity with a waiver of immunity, withstanding, with a right of action to bring an enforcement action, is the state of California. Right. So is it your position that your ordinance complies with the compact? 100% complies with the compact. And I'll tell you why. The tort claims ordinance began life in the 99 compact as a patron tort claims ordinance. The state's concern, Judge Norris of this court was the governor's chief negotiator. I was involved in representing Pechanda and other tribes in those negotiations. The concern was, look, you're creating a casino on your reservation. You're inviting California citizens on. What happens if somebody slips and falls? We need to have some kind of protection. Section 10 deals with public health and safety. And if you read all of Section 10, it's, you know, all kinds of provisions that deal with that. Building and safety code, it incorporates from an earlier section. It deals with 10.1 is general public health, safety, and welfare. Food and beverage handling, water quality, safety, building and safety codes. It includes the patron tort claims for bodily injuries, personal. Right. But then it got changed. That was in the standard compact, and then you amended the compact. Yeah. So then in 06, the state wanted more. It upped the insurance requirements from $5 million to $10 million. And it required arbitration of claims within its scope. Your Honor is correct about that. But there's no waiver in Section 10. What Section 10 says, the first part of 10.2 says the tribe will get insurance. Does the record in this case, and that was the question Judge Wardlaw asked, does the record in this case indicate that the tribe got insurance? I don't believe that the insurance policy is in the record. Okay. But the compact does refer to the standard. The standard general liability policy, right? For non-tribal casinos. Commercial general liability insurance. For non-tribal casinos. Industry standard for non-tribal casinos. And so maybe I'm off on a wild tangent, but there's no evidence in this record of what the policy. There's not. Okay. There's not. And our position is we don't get there. Okay. And my personal answer is I actually don't have personal knowledge about what the policy is, what it says. They could self-insure for the same amount, couldn't they? I'm not sure about that. It's not an issue I've discussed with the governor's office. I just don't know whether the state. At least the compact itself refers to obtaining a standard commercial general liability policy. Commercial policy for non-tribal casinos. And that's the same clause that talks about and it shall enact a waiver for amounts up to the limit. That's why I was interested in what the policy covers. Yes. And then subpart two under 10.2D talks about the tribe shall enact its own law that includes the following terms. So the waiver as to patron tort claims is in the ordinance. It's not in the compact. And all you have to do if you want to see a waiver of sovereign immunity in the compact is read section nine. It's very clear. Just all the Supreme Court cases, all the cases of this court, tribal sovereign immunity waivers have to be very clear. And section nine provides that. And then you read section 10.2. Section 10 says you're going to do it. You're going to do it in your own tribal law. And so his argument, and I want you to respond to it, is that when you did it, you didn't discharge your contractual obligations under the compact and, therefore, the ordinance should be construed as covering his client. I'm rephrasing his argument. That's why I was asking him. That's right. His request is that the federal courts go in, take the tribal law, and excise three or four sections of it that flatly bar his claims. He wants you to rewrite the tribe's law. What law gives this plaintiff standing a waiver of sovereign immunity and a private right of action to seek that relief against the tribal law? There is none. There is none. If the tribe's law violates the compact, the state can enforce it. If the tribe violates the Indian Gaming Regulatory Act, the federal regulatory agency, the National Indian Gaming Commission, has enforcement authority, fines, closure orders, the whole nine yards. No private right of action by a third party. The plaintiff's claims arise from the revocation of his gaming license. His client was a dealer in the casino. The Tribal Gaming Commission, exercising broad authority under Section 6 of the compact, revoked his license. He's claiming damage from that. Does he have a remedy under? I'm not sure this record. Is there any administrative remedy when your license is? Yes, Your Honor. If Your Honor will let me. I know the compact requires remedies, but is there evidence that the tribe had a remedy? In his parallel state court case, there is. Okay. Section 6.5.1 of the compact, which appears at page 24 of appellant's addendum, 6.5.1, denial, suspension, or revocation of licenses provides all rights to notice and hearing for revocation or suspension of a gaming license by the Tribal Gaming Commission shall be governed by tribal law, as to which the applicant will be If your client... Just to finish the thought, the tribe does have procedures in place. I knew the compact provided for it. If your client tomorrow revoked the waiver of sovereign immunity ordinance, just the band's legislative body got together and just revoked the ordinance, leaving patrons with no... Would patrons have no remedy? I mean, that would be a violation of the compact. It would be a violation of the compact under the terms of 10.2D. It would be a material breach. And you might get your gaming license removed or something like that. No, Your Honor. The remedy that the state has for a material breach is termination of the compact. That's what I meant. Yeah. Yeah. I mean... But I guess to your position is even if this ordinance didn't cover any tort claims, it wouldn't matter at all. For a claimant. Well... I think it has to be, isn't it? I would think it would matter. It would matter to the tribe and it would matter to the state. But the guy who slipped and fell couldn't come into care. Your Honor, the slip and fall, I mean, the accidents that this was intended to cover get resolved day in and day out. This is a large facility. There are thousands of people visiting it. They process hundreds of these claims. This claim is not the kind of claim that was intended to be covered. The coverage for employment issues are in other sections of the compact. The coverage for licenses is in Section 6 that I mentioned. But this was aimed at patrons. The other thing that happened in 2006 was it got expanded. The governor's office at that time said, well, patrons aren't the only people in the casino that could be injured. What was the governor's office at that time? Schwarzenegger. 99 was Davis and 06 was the Terminator. They expanded it to cover vendors. And you'll see there's language there. And it says including but not limited. But, you know, the issue was, well, what if somebody, one, you know, they come and stay at the hotel and she goes gambling and he goes to play golf next door at the golf course. Right? So there was a recognition that people could be coming on connected to the casino activity but maybe not, quote-unquote, literally in the narrow sense of patron. So to go back to the question about remedies, what remedies other than arbitration are available to Constantino? His remedies for his license revocation were under 6.5.1 and 6.5.5 tribal law. The tribal gaming commission has regulations governing the whole process. And he had a hearing. There is evidence of that. His state court case, he sued all the gaming commissioners personally for money damages for revoking his license. That case is pending in Riverside Superior Court. That tribal gaming commission regulation, those regulations are in the record in that case. They're not in the record in this case. Okay. And then the Campo case similarly addressed, I guess, addressed a similar ordinance and did conclude that the claims had to be arbitrated. How do you distinguish the Campo case? A lot of ways. In Campo, the claim was by a patron who slipped and fell at the casino. And her claim was denied and they denied arbitration. There was a waiver for arbitration of patron claims. And there was no process in the tribal ordinance for appealing that denial of the arbitration. And what the Campo panel said was, well, we think they meant to include that. We're going to read that in, essentially. It was kind of an equitable consideration. It was kind of an equitable decision. The problem is the Supreme Court of the United States of America has said tribal sovereign immunity can't be abrogated by implication. Equitable considerations don't come into play. All those cases are in our brief. Campo, in terms of finding a waiver in the compact itself on this issue, is just wrong. That's what I was going to ask you. It's just wrong. It's just wrong. If you read the compact and you read that language at Section 10 in context of Section 9 and the other provisions, they clearly desire to reach a result, is my interpretation of Campo. You'd urge to us that Campo is not correctly decided. That's correct, Your Honor. And I would just note that there's an unpublished case, Sullivan v. Workers' Comp Appeal Board, that agrees with me on this point. So what protection do they employ? Well, that's an excellent point, Your Honor. Let me finish the site. 2006 Westlaw 2374643, Sullivan v. Workers' Comp Appeals Board, on that compact issue. The protections for employees in the 06 compact are workers' compensation, and unemployment insurance, and disability. Workers' Comp is 10.3A. Unemployment, disability is 10.3B. Union rights are in 10.7. There are some protections. If the court were to take judicial notice of the Fort Independence compact, which went into effect in 2014 and is publicly available on the website of the National Indian Gaming Commission and the California Gambling Control Commission, the court will see, along with the patron tort claim section we're talking about here, there's an entirely new set of requirements that give employees similar kinds of rights that's missing from this compact, which just highlights the fact that the patron tort claim section does not cover these kinds of claims. So with respect to Constantino's state claim in Riverside, wouldn't CAMPO be controlling law, given that it's the Fourth District Court of Appeals? Well, it's in the third, I think. Riverside's the third, sure? No. I know. Or the second. No, I don't think it's the second. The second's L.A. Well, we have a dispositive motion argument in that case coming up in a few weeks, so we'll get there. I'm just wondering if you think CAMPO's bad law, but it's actually controlling in the Fourth District Court of Appeals. Yeah, Fourth is San Diego. I don't know. I think Riverside's the fourth. I think the fourth is Orange County, but I don't know if that extends to Riverside. No, it's San Diego. I just had an argument at the fourth. It's San Diego. Well, Indian gambling, that's a powerful force in the political life of this state. It's been a powerful force for good in Indian country, Your Honor. It's the new Buffalo, is what they call it. Okay. Yeah, but they probably have the best cadre of lobbyists in the state. Well, they get what they want. The tribal leaders that I work with would disagree with you about that, Your Honor, but I understand your point. The tribes have gone from poverty and insignificance and invisibility to a visible sector of society because of Indian gaming. Certain people get the benefit of it, but it isn't spread around. It is spread around, Your Honor. You're wrong about that. That hasn't been what I've learned sitting on these cases. Well, Your Honor, that's just not the case. The Indian Gaming Regulatory Act has specific provisions that mandate the uses of net revenues of tribal gaming operations can only be used for tribal governmental health and welfare, economic development, strengthening tribal governments, charitable contributions, and contributions to local governments for services. And the compacts in California were the first in the nation to include revenue sharing to non-gaming tribes. Look at Section 4. The benefits of Indian gaming have been spread far and wide within Indian country. And among a lot of non-Indians who work in these facilities. To your knowledge, has the state ever sued the tribe for enacting a tort ordinance that was not as broad as the compact? I'm not personally aware of that. I've personally participated in dispute resolution proceedings with the state on behalf of a number of tribes. The state is not shy about raising it if it thinks the tribe is in breach. So your dispute resolution, you're talking about arbitration? There are three levels. If you read Section 9, there's a meet and confer, and then there's voluntary arbitration if both parties agree, and then there's resort to court, and we have an express sovereign immunity waiver with very strict limits on it, including no third-party participation to resolve compact disputes. Well, isn't part of your argument that the waiver is limited to personal injury torts? Huh? The waiver and the compact. It says personal injury, and it says bodily injury. Bodily injury and property injury. Why did you have to have both of those? What personal injury and then bodily injury? Why is that the language in the compact? That's the language that the state and the tribes negotiated back in 99, Your Honor. Can I ask you when you finish this? Are they overlapping, those two terms? I don't know, and we don't get there in this case, I think. Under the ordinance, the ordinance doesn't cover his claim. My question, and it just arose when Judge Gregerson asked you this one, is the word tort in the compact? I don't think it is. We're referring generally to these as tort claims, but the compact doesn't promise a waiver of tort claims, does it? I'm not 100 percent sure. I've been looking for the word. I've been searching for the word tort, and I can't find it. I think you're right about that. I'm not 100 percent sure. Okay. Thank you. I can pull it up and look. We can all look at it. Thank you. I think there is a definition of tort somewhere in all this. All right. Thank you. I'm hoping for a little generosity on rebuttal here, given the time that's been used. But to answer your question quickly, Judge Hurwitz, as far as I'm aware, the word tort appears only at 10.2 section 2. I'm sorry, 10.2d, Romanette 2. And that's the section wherein, I would argue, the tribe waived its sovereign immunity. And the court must consider C&L Enterprises here. Language that indicates a word tort should be read as a word. Because you're asserting that your client's claim falls within the definition of tort, right? Yes. It falls within the definition as described in 10.2d, Romanette 2b, the tribe waives its right to assert sovereign immunity with respect to arbitration and court review of such claims. That refers to such claims listed in sub A. Right. And those are such claims as bodily damage, personal injury. Bodily injury, property damage, or personal injury. And, yes, I'm arguing that my client's claims fall within that definition. Judge Pragerson had an inquiry about employees' remedies. They're irrelevant in this case. Mr. Cosentino is not suing his employer. I want to make that very clear. The Pechanga Gaming Commission is a licensing body. It is a third party to his employment relationship. Don't worry about that. I'm just asking questions. I just want to make sure. Don't worry. And I'll give you the time because it's only fair that your opposing counsel had. How does your client's claim fit within the definition of a claim of bodily injury, property damage, or personal injury? California law recognizes employment in a lawful profession as a property right. And they have interfered with his right to pursue that constitutional right. So when they interfere with his right to pursue employment as a table games dealer, they've interfered with his property. And, therefore, it's a property claim. So you're talking about property in the sense of due process deprivation. Property damage, it's money they've taken out of his pocket forever. He'll never be able to work as a table games dealer again because of this revocation. It's a personal injury to the extent it's infliction of emotional distress, both negligent and intentional. So the language, and one of your honors made a good point. Why say bodily injury and personal injury? Only one of us. What's that? Go ahead. I think it was Judge Fragerson. But why say bodily injury and personal injury? I would argue it's to convey that this covers everything. This is as broad as possible language that says, you know, all torts are covered. And you're right. It doesn't say torts. But here it says you must enact a tort liability ordinance. It's clear that the state and the tribe are talking about torts here. Well, it says that California tort law shall govern. So torts is in there. But then – Up to the limits of the policy, it says. So there's two torts. It also says the tribe shall maintain in contortive force its tort liability ordinance in Romanette 2. Yeah, and that was where I started. You're in the same section, 10.2d, little i, b, that the tribe – it shall enact an ordinance providing that the tribe waives its right to assert sovereign immunity of such claims, but only up to the limits of the policy. Now, to me, that means it's waiving its claims to the extent that they're covered by the policy. But that's why I asked the first question. I would disagree, Your Honor. It says only up to the limits of the policy. So it's basically it's limiting its liability to $10 million. And whether it's self-insured or there is actually a policy, Mr. Cosentino is never going to get more than $10 million under the compact. So you think that even a claim not covered by the policy is required to be waived? Yeah. If it's a claim that falls within 10.2d, Romanette 2a. If Your Honors have any more questions, I would be happy to answer them. Otherwise, I think Your Honors understand my position. And Mr. Cosentino requests that the dismissal be reversed and the petition be remanded with instructions to be granted. Did your client follow the provisions of 5H, employment-related claims? They only be brought pursuant to the grievance procedures of the casino. Well, he has no grievance with the casino. He has no grievance with the Pechanga Resort and Casino, which was his employer. So this is not an employment-related claim. I mean, if the court can conclude that a claim asserted against a third party to the employment relationship for torts that occurred after Mr. Cosentino's last day of employment that did not occur at his place of employment is employment-related, then I respectfully submit that almost any tort can be shoehorned into employment-related. I agree with you that it's not employment-related. But where is it covered in or not in the Pechanga Gaming Facility Tort Liability Act? Where is his claim? He said that act is irrelevant because the lawsuit is against the commissioners. Right. It's against the commission. That's your state lawsuit. I'm sorry? That's your state lawsuit. The state lawsuit is against the commissioners individually. So I'm sorry, the question was? This lawsuit is against the tribe. And the Pechanga Gaming Commission. So where does it fall within the Pechanga Gaming Facility Tort Liability Act of 2008? The waiver in the Tort Liability Act tracks the exact same language in the complaint. So let's see. Section 5 is the limited waiver of sovereign immunity, which I argue goes too far. Let's see. Let's see. You think 5C? Okay. Section 3D. Claim means a petition for an award under this act based upon bodily injury, property damage, or personal injury arising out of, connected with, or relating to the operation of the gaming facility. So there and then you'd say 5B? 5D is something that the Pechanga Band invokes to limit its waiver. But the entire ordinance is a waiver. Under C&L Enterprises, the court should find that both the compact agreement that the tribe shall waive specifically these tort claims and the enactment of a Pechanga Tort Claims Ordinance that sets forth the rules for bringing these claims is a waiver. Nobody doubts that the ordinance is a waiver. The question is it's a waiver that excludes your claim. You agree with that? Yes, I agree with that. Okay. So that's the difficulty. So in closing, I'll just say I believe, my client believes, that the court should follow the holding of Campbell Band and reach the same conclusion that a tribal ordinance that violates the compact violates federal law and is void and unenforceable. So those sections that purport to exclude what are arbitrable tort claims under the tribe's required waiver should be read out of the Tort Liability Ordinance and it should be enforced. The court should remand with instructions to grant the petition. All right. Thank you very much, counsel. Consentino v. Pechanga Band will be submitted.
judges: Pregerson, Wardlaw, Hurwitz